## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AMBER JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, GEORGIA,<br>OFFICER CODY SWANGER, in his<br>individual capacity, and OFFICER<br>JEREMIAH BRANDT, in his<br>individual capacity,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:21-cv-02578-MHC |

## BRIEF IN SUPPORT OF DEFENDANT CITY OF ATLANTA, GEORGIA'S MOTION TO DISMISS

COMES NOW CITY OF ATLANTA, GEORGIA, Defendant herein, and files and serves this Brief in Support its Motion to Dismiss, showing the Court as follows:

### I.    INTRODUCTION

As concerns Defendant City of Atlanta (the "City), this 42 U.S.C. Sec. 1983 action seeks recompense under the Fourth Amendment for actions taken by two of its officers during the course of a seizure at the main exit of Lenox Square Mall. The seizure took place shortly after midnight on May 30, 2020, just hours before a City-

wide curfew went into effect pursuant to Mayor Keisha Lance Bottom's Executive Order 2020-92 due to violent outbreaks emanating from the George Floyd demonstrations.

Among various state law claims, Plaintiff claims she was seized without probable cause and was subjected to excessive force in the process, both in violation of the Fourth Amendment's prohibition on unreasonable searches and seizures. In her attempt to prove that the City should be liable for these actions Plaintiff has two theories. Both are brought under the umbrella of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) which holds that in order for municipal liability to be had under Section 1983 a plaintiff must show the offending unconstitutional conduct was proximately caused by a city's custom, policy or practice.

The first theory is that the City has an unofficial, but widespread custom of failing to conduct meaningful investigations into allegations of excessive force. The second theory is a specific allegation that the City has institutionally failed to train its officers to intervene in those instances when fellow officers utilize excessive force during the course of an arrest.

To get home, Plaintiff lays out numerous instances where investigations were undertaken to determine the propriety of actions taken by officers in use of force

situations. Plaintiff claims the investigations were not meaningful, resulting in a department-wide understanding that allegations of excessive force would not be taken seriously. As a result, the argument appears to go, officers thusly routinely utilize excessive force during the course of interactions with suspects without fear of internal reprisal. This theory asks the court to assume that officers are prescient, and in the heat of effectuating an arrest throw constitutionality to the wind.

The problems with this crystal ball theory are many. First, the descriptions of these instances leave too many questions as to what it is Plaintiff is suggesting was wrong with the investigations other than to say she thinks the ultimate outcomes were incorrect, and that certain truth-detecting strategies which plaintiff would have preferred used were not implemented. While stating the results of these investigations were wrong and did not go far enough, the Complaint leaves the reader with nothing more than that – conclusory statements that the investigations were incomplete and came up with the wrong answers. In other words, Plaintiff urges the court to assume that each and every use of force investigation should have resulted in adverse findings against the officers.

Nor does the Complaint reflect any identifiable nexus between these referenced investigations and the Lenox Mall matter at issue. Consequently, the

Complaint falls well short of clearing the *Iqbal* and *Twombly* prohibitions against sweeping conclusory allegations.

With respect to Plaintiff's attempt to hold the City liable for Defendant officer Brandt's alleged failure to intervene, the Complaint is facially defective in its conclusions and inability to connect how the cited investigations in any way could lead to any such failure by the officer.  More, given the videos showing the incident, there was no failure to intervene as a matter of law – Officer Brandt was on the other side of the suspects' car, and the interaction between Officer Swanger and the Plaintiff was too swift and sudden for Brandt to do anything about it.

The Complaint's other *Monell* shortcoming is that the investigations forming the basis for the custom/policy claims all took place between 2002-2015.  The last cited allegedly infirm investigation took place a full five (5) years prior to the date of loss here, and a full two (2) years before then-Police Chief Erika Shield's took her position as Chief.  With no instances of "inadequate" investigations having taken place for the five (5) years prior to this May 30, 2020 incident, and with none of the cited-to investigations having taken place during Chief Shields' tenure as the alleged final policymaker for the City on police practices, Plaintiff's claims are well short proximate cause-wise for the lack of temporal proximity between the last allegedly faulty investigation and the incident with Plaintiff.  Dismissal is appropriate.

## II.    <u>FACTS – WHAT THE COMPLAINT DOES AND DOES NOT SAY</u>

Although the Complaint makes cursory mention of atmosphere enveloping the City of Atlanta on May 29 and May 30, 2020 it falls short in putting the Court on notice of just what was going on at that time.  For, by the time Plaintiff encountered law enforcement just after midnight on May 30, 2020, the downtown area from which Plaintiff had come was under siege by violent protestors and others, and Lenox Square had been vandalized and burgled.  Given the nature of the case and the uniqueness of the critical moment in history when and where it occurred, it is imperative Plaintiff set out these factors in a Fourth Amendment case, where the Constitutional analysis requires the Court to review all the surrounding circumstances giving rise to the use of force.

The way the Complaint reads Plaintiff had left one "peaceful protest" and gone to another, when that takes liberty with the known facts.  (Complaint, §§ 5, 15-17) (see Exhibits A (video - Swanger body worn camera) and B (video - Swanger body worn camera spliced with onlooker video) to the City's Motion to Dismiss.  According to the Complaint, after attending a "peaceful protest" in downtown Atlanta into the late evening hours of May 29, 2020, they left the area to attend another "peaceful protest" they believed would be taking place at Lenox Square.  Exhibit C shows the peaceful protest at Lenox Square that Plaintiff alleges they

could not find on May 30, 2020.  Exhibit D shows the scene in downtown Atlanta where Plaintiff was originally in attendance.  The City asks the Court to take judicial notice of these exhibits, and just as importantly, the social emergency and level of violence that was going inside the City of Atlanta at all times relevant to this action. The City moves separately, seeking the Court to take this notice.

Turning back to the Complaint, Plaintiff describes the events at Lenox Square as follows:

18.
Ms. Jackson and her fiancé entered the Lenox Square Mall parking lot, using the entrance located at the intersection of Lenox Road, NE and Wright Avenue.

19.
After driving around the mall for several minutes, Ms. Jackson and her fiancé were unable to find the protestors and decided to head home.

20.
When Ms. Jackson and her fiancé attempted to leave the Mall, they encountered a barricade.

21.
At that moment, there were no law enforcement personnel present at the exit to allow them to leave.

22.
At that time, Ms. Jackson exited the vehicle to relocate the barricade a few feet away so that they could exit the Mall.

23.

There was no sign on the barricade prohibiting its relocation for the purpose of exiting the Mall.

24.

Neither did any law enforcement officer issue any directive to Ms. Jackson prohibiting her from relocating the barricade a few feet.

25.

After relocating the barricade a few feet, Ms. Jackson got back in the vehicle.

26.

As Ms. Jackson's vehicle was preparing to exit, a City of Atlanta Police Department patrol car pulled up behind the vehicle and two officers hurriedly got out of the patrol car.

This version of events leaves out important details otherwise alleged in the Ante Litem Notice attached to Plaintiff's Complaint as Exhibit A. In that Notice, Plaintiff describes the scene thusly:

> After driving around the mall for several minutes, Ms. Jackson and her fiancé were unable to find the protestors and decided to head home. Ms. Jackson and her fiancé asked an on duty police officer for directions to exit the Lenox Square Mall parking lot. The officer directed Ms. Jackson and her fiancé to the main entrance located on Peachtree Road and informed them that other law enforcement personnel would be there to allow them to exit.

(Exhibit A to Plaintiff's Complaint, Doc. 1, p. 43). The fact of the matter is that Plaintiff had found herself in the middle of a major crime scene, unable to leave because all the exits had been closed off. When Plaintiff reached the place they were told to exit, they found it barricaded, but without immediate police presence. So,

rather than waiting for an officer to let them out of the crime scene, Plaintiff exited the vehicle from the passenger side, removed the barricade, and returned to the car so they could exit. She claims there was no indication whatsoever that she was not entitled to do just that. (Complaint, §§ 20-26).

Despite Plaintiff's contention there were no law enforcement personnel near the exit at the time, by the time she got out of the car, removed the barricade, came back to the car, and her fiancé began pulling away, the Defendant officers were already at the car. Defendant Officer Brant went to the driver's side of the vehicle, while Defendant Officer Swanger, with his service weapon unholstered went to the passenger side. (Complaint, §§ 26-28). In Exhibit B, we can see Officer Brandt circling around the front of the car to the driver's side while Swanger approaches the passenger side door.

The Complaint next describes the incident by saying Officer Swanger profanely ordered Plaintiff out of the car, pointed his gun at her with his right hand, opened the door with his left hand, and dragged Plaintiff out of the car where she ended up on her knees; after which, she says Officer Swanger put his left arm around her neck, lifted her off the ground and slammed her to the ground. (Plaintiff's Complaint, §§ 30-34). Yet, that's not what the video footage shows. Exhibit B confirms that Officer Swanger ordered Plaintiff out of the car, but it does not show

him "dragging" her out – she exits the vehicle of her own volition. And then she runs. Nowhere in Plaintiff's Complaint is it suggested that Plaintiff was attempting to resist arrest or to get away from the officer, and yet that is exactly what Exhibit B shows, all the way up to the point that Officer Swanger forced her to the ground. Once Plaintiff is out of the car, it is only eight (8) seconds before she is on the ground getting handcuffed.

Another thing the onlooker's video show is the location of Officer Brandt when the use of force episode goes down. At the 26-second mark of the spliced video, we see Brandt engaging the driver, while Plaintiff gets out of the car and runs. In the eight (8) seconds that follow nothing occurs that would have given Officer Brandt any idea that Officer Swanger was utilizing excessive force, and so there was no reason nor reasonable opportunity whatsoever to intervene.

No other fact alleged in the Complaint is pertinent to the City's Motion to dismiss, which is positioned to be granted.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Motion to Dismiss Standard

Mere conclusory allegations or bare legal conclusions are generally not sufficient to withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. See *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-

28 (8th Cir. 1999). In general, a motion to dismiss under 12(b)(6) asserts that even if the well pleaded material allegations of the complaint are true, such allegations are legally insufficient. Such a motion should be granted when it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which can be proved in support of the claim.  See *Haines v. Kerner*, 92 S.Ct. 594 (1972).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint.  See *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." Id. This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663.   Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief."  *Am. Dental Ass'n*., 605 F.3d at 1290.  In determining plausibility, the court should "draw on its experience and common sense."  *Iqbal*, 556 U.S. at 664.  Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the

plaintiff[s] would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal* and relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*. at 1289 (quoting *Twombly*, 550 U.S. at 570).

### B.    Plaintiff's *Monell* Claims Should be Dismissed

#### 1.  *Monell* Basics for This Case

Plaintiff claims the City should be liable because the purported  excessive force of utilized by Officer Swanger was proximately caused by the City's alleged shortcomings in not conducting meaningful investigations into allegations of excessive force, and because Officer Brandt's alleged failure to intervene was proximately caused by a failure to train officers regarding appropriate intervention when fellow officers engage in excessive force.

Municipal liability under Section 1983 may not be grounded on a theory of *respondeat superior. Monell v. New York Dept. of Social Services,* 436 U.S. 658 (1978). That said, it is "well established that a municipality may be held liable under § 1983 . . . when the deprivation at issue was undertaken pursuant to [municipal] 'custom' or 'policy.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991).  Municipal liability may be based on, among other things, "a practice or

custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Congruently, plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice coupled with deliberate indifference toward same. *Church v. City of Huntsville*, 30 F. 3d 1332, 1342–43 (11th Cir. 1994).

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik v. City of St. Louis*, 485 U.S. at 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). In other words, a longstanding and widespread practice is deemed authorized by the final policymaking officials because they must have known about it but failed to stop it. *Brown, supra*, 923 F.2d at 1479-81.

Along with these other principles, a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Praprotnik*, 485 U.S. at 127; see also *Mandel v. Doe*, 888 F. 2d 783, 792–93 (11th Cir. 1989). To impose liability, Plaintiff must show: "(1) that

his constitutional rights were violated; (2) that the municipality had a custom . . . that constituted deliberate indifference to that constitutional right; and (3) that the . . . custom caused the violation." *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004); *Brown, supra*, 923 F. 2d 1474, 1479 (11th Cir. 1991). And, of course, the offending custom or policy must be the "moving force" behind the violation. *Monell*, 436 U.S. at 694.

### 2. Plaintiff's First *Monell* Claim – Failure To Conduct Meaningful Investigations Resulting in Swanger's Use of Force

#### a. The Investigations Plaintiff Concludes Proximately Caused Officer Swanger's Actions

Plaintiff alleges that the City's custom and policy of failing to conduct meaningful investigations into allegations of excessive force proximately caused Officer Swanger to act as he did in taking Plaintiff to the ground (Complaint, ¶¶ 104-16). In part, Plaintiff criticizes those investigations for not utilizing a certain truth-finding tool, the Computer Voice Stress Analysis (CVSA) in instances where no audio or video of the force incident is available.

Plaintiffs lay all these purported shortcomings directly at the feet of the "Chief of Police" position (a collective label Plaintiffs utilize to include each Chief of the APD since 2002). Chief Erika Shields was Chief from the start of 2017 until the summer of 2020. She was Chief when this incident occurred. (Complaint, ¶ 107).

In an attempt to flesh out her pleading requirements, Plaintiffs lists eight (8) instances of uses of force that were investigated between 2003 and 2015 in what she claims were not meaningful ways.   For each investigation, Plaintiff points out perceived shortcomings with the process and ultimate decisions.   This is Plaintiffs' pled evidence of the "moving force" behind the Swanger's questioned actions. *Monell*, 436 U.S. at 694. The proffered incidents that were investigated include:

> **2003- Childs** (use of force against handcuffed arrestee inside precinct)
> **2006 - Clay** (use of force against suspect)
> **2006  - Lockette** (use of force during investigatory stop)
> **2011 - Gibbs** (use of force against handcuffed man during the execution of a warrant)
> **2011 – Parks** (use of force (situation unspecified); Chief rejects Atlanta Citizen's Review Board (ACRB) recommendations
> **2014 – Cato** (use of force (situation unspecified); Chief rejects ACRB recommendations)
> **2015 – Williams** (use of force situation in a hotel room)
> **2015 – Palazola** (use of force by three officers)

As a brief aside, if we put the mentioned specifically-pled examples on the shelf for a moment, all that is left of Plaintiff's two theories of liability in the Complaint are the conclusory, bare-thread, "unadorned, the-defendant-unlawfully-harmed-me accusation" characteristics of pleadings that offend the principles laid out by *Iqbal* and *Twombly*.   Case law from the Western District of Tennessee (Eastern Division) is instructive.

> Plaintiffs have offered no well-pleaded facts to support the legal conclusion that the City was on notice of a pattern or practice of

unconstitutional uses of force by officers in its employ against mentally impaired persons or others who could not comply with instructions, or that it had a custom of ignoring violations or failing to discipline officers who engaged in such behavior. See *Nouri*, 615 Fed. App'x at 296-97 (plaintiffs complaint found fatally deficient where it failed to set forth facts showing pattern of misconduct or reports to municipal officials in support of custom of tolerance claim against municipality); *Lowe v. McMinn Cnty*., No. 1:15-CV-95, 2015 WL 5177734, at *5 (E.D. Tenn. Sept, 4, 2015) (plaintiffs allegation that municipality had not instituted a proper policy for dealing with persons in the midst of a mental break from reality and failed to train officers to handle confrontations with such persons insufficient to state a claim under §1983 absent allegation of a pattern of constitutional violations by untrained employees is insufficient to establish deliberate indifference); *Sexton v. Kenton Cty. Det. Ctr*., 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) (holding that a municipality's alleged failure to discipline officers in a single instance, as opposed to a systemic policy, is insufficient to survive a motion to dismiss). Nor have the Plaintiffs pleaded any specific facts to suggest that the City failed to adequately prepare for recurring situations where a constitutional violation would be likely to take place. *See Munson v. Bryan*, No. 3:15-cv-0078, 2015 WL 4112429, at *5 (M.D. Tenn. July 8, 2015) (where plaintiff failed to plead any specific facts to indicate municipality failed to adequately prepare for recurring situations in which constitutional violations may occur, there were no grounds to support a §1983 claim against the county defendant).

*Epperson v. City of Humboldt, Tenn*., No. 1501074, 2015 WL 6440740 at *6 (W.D. Tenn. Oct. 21, 2015). Hence, everything should then turn on whether the specifically pled examples provide enough plausibility to help state an actionable claim for *Monell* liability.

It is remarkably unclear how the cited examples tie in to Swanger's use of force. Plaintiff's first example is the 2003 Childs investigation, where she takes issue

14

with the weight of the evidence, and that the investigation closed without finding inappropriate use of force. That's it. As with every single other example set out in the Complaint, both alone, and in tandem with the other examples, the claim does not nudge across the line from "conceivable to plausible". The court is asked to simply conclude that Plaintiff is correct in her conclusion that in her opinion this was not a reasonable investigation. And, that this creates license for excessive force in general and in this case in particular.

Plaintiff is dissatisfied with the City's handling of the second example, the 2006 Clay investigation, because again, there were no findings re the use of force. Turning to the 2006 Lockette case, there were two reversals of two separate findings of excessive force; ultimately finding the allegations "not sustained," and in connection with those ultimate findings, there was no investigation into any failure to intervene. Plaintiff takes issue with the lack of substance explaining the reversals and take issue with the fact that in connection with the temporary findings, there was no investigation into the failure to intervene. Why there should be an investigation into a failure to intervene when the two officers were ultimately exonerated is problematic for Plaintiff, as is the notion that they were both charged with excessive force. Plaintiff cannot possibly be suggesting that when more than one officer has

utilized excessive force (for example, two officers are charged) that an investigation should be initiated into each's failure to stop the other one[1].

In Lockette and other examples listed above, Plaintiff faults the City for not investigating officers' alleged failures to intervene. But it is Plaintiff's *second* theory of *Monell* liability that concerns perceived lack of investigations of instances of failure to intervene as being causative of the claims against Officer Brandt for not preventing Officer Swanger from using the force he did. And so, by mentioning this particular shortcoming in connection with her first theory of liability, alleged faulty investigations into uses of force, Plaintiff is mixing and matching her theories, misses the mark of her requirement to state "a short, plain statement of the claim" showing she is entitled to relief. (Federal Rule 8(a)(2)).

Nor do Plaintiffs cite that in Lockette, or in any other of the 8 instances alleged, there were later direct consequences for the alleged instances of inappropriate force or failure to intervene, or incomplete investigation, e.g.,., successful lawsuits. Instead, along with this vagueness, Plaintiff pleads *Iqbal* and

---

[1] In Lockette and other examples listed above, Plaintiff faults the City for not investigating officers' alleged failures to intervene. But it is Plaintiff's second theory of Monell liability that concerns perceived lack of investigations of instances of failure to intervene as being causative of the claims against Officer Brandt for not preventing Officer Swanger from using the force he did. And so, by mentioning this particular shortcoming in connection with her first theory of liability, alleged faulty investigations into uses of force, Plaintiff is mixing and matching her theories, misses the mark of her requirement to state "a short, plain statement of the claim" showing she is entitled to relief. (Federal Rule 8(a)(2)).

*Twombly*-deficient conclusions about what those incidents were, what the City and this Court are to take away from them, and just how these events have any part in a widespread practice of any kind. Simply but, Plaintiff builds to conclusions based on conclusions.

In Weems, a 2011 use of force incident, the investigation was closed with findings regarding use of force. That is all Plaintiff say about Weems.

In the 2011 Parks case, Plaintiff claims the APD reversed an Atlanta Citizens Review Board (ACRB) finding of excessive force, ultimately determining that the use of force there (pulling of hair) was reasonable under the circumstances. CVSA was not utilized. Plaintiff does not make even make the effort to explain why the use of force was not reasonable (presumably taking issue with the ultimate finding), and instead complains there was no investigation into the failure to intervene. Again, the relevance of a failure to intervene investigation into a matter in which reasonable force is found to have been utilized is unclear, and its possible further relevance to the *Monell* claims even more distant. This will find no case support.

A quick word about the non-use of CVSA. Although Plaintiffs are clear they would prefer the City to utilize this investigatory technique, they fail to explain why their preference impacts the claims here nor does case law support the idea that CVSA is determinative. There is no claim that such technique is the standard by

17

which all investigations are compared. There is no claim this is the standard around the country. There is no claim that any litigation anywhere in the country has led to findings that such "failures" that have led to Constitutional torts. Plaintiffs again fall short because the allegations are conclusory, specious, and implausible under the *Iqbal* and *Twombly* pleading standards.

Continuing, the 2014 Cato incident involved pepper-spraying, a reversal of the ACRB recommendation of suspension, and again, no investigation into failure to intervene in a case where the ultimate findings were that the use of force was determined to be justified. This incident does nothing to advance Plaintiffs' cause.

Failure to use CVSA is the only misgivings Plaintiffs identify in the 2015 Williams' matter, other than to say they disagree with the closing of the investigation without any use of force findings.

Plaintiff concludes with the 2015 Palazzolo case, where she says three (3) officers beat a suspect. No investigation of alleged excessive use of force is even mentioned, but Plaintiff complains that no investigation into failure to intervene was ever had. This example is used without explanation.

### b. Plaintiff Fails to Plead a 12(b)(6) Sufficient Cause of Action Against the City for Excessive Force Resulting from Perceived Shortcomings in the City's Investigations Into Allegations of Impermissible Force

Leaping off the pages of the Complaint is the 2015 cut-off point for any purported shortcomings in the method and manner by which the City conducts investigations into allegations of excessive force.  The 2015 Palazzolo matter (the most recent one) happened 5 years before this incident and 2 years before final policymaker Erika Shields became Chief of Police.

The logic only goes one way here.  Absent timely allegations of widespread and rampant constitutionally infirm investigations of constitutionally infirm uses of force on Chief Shields' watch, the existence of a bad custom/policy simply evaporates.  The ultra-conspicuous absence of such allegations speak loudly. Everyday deductive reasoning leads to the inevitable conclusion there is a new custom in play here, the mirror opposite of the policies alleged.

Plaintiffs point directly to Chief Shields as the official policymaker governing review of an APD officer's use of force, and yet cite to not one matter of irresolute use of force investigation having occurred on her watch.  More, as pled, the incidents serving as the meat and bones of Plaintiffs' custom argument fall well shy of the *Iqbal* and *Twombly* standards requiring plausibility and non-conclusory pleadings. Instead, Plaintiff vaguely point to 7 isolated incidents covering a 12-year period of

time (again, 5 years before the actions complained of here, and 2 years before Shields even became Chief of Police) complaining about the outcomes of those investigations, and the quality of the investigations leading to those outcomes. But the dots simply do not connect.

First, 5 years between the last cited investigatory outcome and the incident at issue is too remote in time to state a claim. See *Khoury v. Miami-Dade County School Board*, 2021 WL 281762 (11th Cir. July 7, 2021) (3 years between last identified evidence of custom and the date of loss to remote); *Church*, supra (1-2 years between last identified evidence of custom and the date of loss); See *Smith v. City of Moultrie*, 2007 WL 2668138 (M.D. Ga. 2007) (approximately 1.5 years between latest complaint and subject incident); *Rodriguez v. County of Westchester*, 2017 WL 118027 (S.D.N.Y. 2017) (over 6 years between the supposed notice and subject incident); *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. 2013) (less than 2 years between the supposed notice and subject incident).

Second, as mentioned throughout, Plaintiff's tenuous descriptions of investigatory shortcomings, and how they are the moving force behind the officers use of force are vague, conclusory, and implausible. They in no way describe evidence of deliberate indifference to the rights of those involved in use of force, let alone in a situation such as the one here. Absent much, much more, Plaintiff's

Monell claims of a custom of excessive force based on failure to conduct meaningful investigations fall well short of the mark and are ripe for dismissal.

    3. **Plaintiff's Second *Monell* Theory – Failure to Supervise/Train/Investigate as Proximately Causing Officer Brandt not to Intervene – Likewise Fails**

For *Monell* liability to attach, there first must be a Constitutional violation. The alleged tort here is for Officer Brandt's purported failure to intervene in order to prevent Officer Swanger's use of force. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force" can be liable for failing to intervene, so long as he "was in a position to intervene yet failed to do so." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)

But Officer Brandt had no such chance to intervene as shown on Exhibit B. Simply put, he was not in a position to intervene and failed to do anything, because things happened too fast, and he was on the complete other side of the suspect's vehicle engaged with the driver suspect. As a matter of law, Officer Brandt did not fail to intervene, and thus the City cannot be liable for any such alleged failure.

Alternatively, should the Court find evidence of a failure to intervene, Plaintiff otherwise fails to plead a sufficient cause of action for *Monell* liability against the City. On this claim, Plaintiffs sweepingly alleges that the City of Atlanta's alleged

systemic failure "to investigate, reprimand, discipline, train, and/or supervise" police officers regarding the duty to intervene" proximately caused Officer Brandt to fail to Intervene in Officer Swanger's interaction with her. The failure to train or supervise creates liability only in limited circumstances, where there is inadequate training or supervising of the employees, this failure to train or supervise is a policy, and the policy causes the violation of a citizen's constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 389 U.S. 378, 387-91 (1989)).

Since cities rarely have an express policy of inadequately training or supervising its employees, a plaintiff may prove a failure by showing a "deliberate indifference" to the rights of the citizens. *Gold*, 151 F.3d at 1350. "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile, Ala*., 592 Fed. Appx. 793, 799-800 (11th Cir. 2014). Plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* Without notice of a necessity to train or supervise, a municipality is not liable as a matter of law.

*Id*. at 1351.   Additionally, when relying on past complaints, a plaintiff must demonstrate that the complaints had merit.  *Id*.  Nowhere does Plaintiff make such a factual allegation.

In support of her claim that occurred in 2020, Plaintiff relies on 8 alleged incidences occurring in 2002, 2009, 2011, 2011, 2013, 2014, 2015 and 2015. (Complaint, ¶ 122).  Plaintiffs states that these are examples, but Plaintiffs are required to provide specific incidences that would give the City of Atlanta knowledge of a need to train and/or supervise.  See *O'Kelley v. Craig*, 781 Fed. Appx. 888, 899 (2019) (affirming the dismissal of failure-to-train claim because plaintiff failed to offer "any specifics of current training or whether the Sheriff was aware of any similar prior incidents").  Thus, these examples must support Plaintiff's allegations of failure to train and/or supervise.   For multiple reasons, these allegations are insufficient to provide a basis for failure to train/supervise liability. Many of Defendants' arguments are similar to or the same as the arguments raised in response to Plaintiffs' Monell claims above.

First, Chief Shields did not take part in any of the aforementioned incidents. The latest incident referenced, in 2015, occurred 5 years before the subject event, 2 years before final policymaker Erika Shields became Chief of Police. These incidents spanning a 12-year period of time, well before the event at issue in this

lawsuit, is insufficient to survive dismissal.  Based on these allegations, it cannot be said that City of Atlanta had knowledge of a widespread failure investigate allegations of failure to intervene.  See, e.g., *Reese v. Herbert*, 2006 WL 1892026 (N.D. Ga. 2006) (rev'd in part on other grounds).  Defendants reincorporate and reiterate the specific arguments discussed above in response to these incidences as if fully set forth herein.

Importantly, Plaintiffs allege nothing to show that these incidents have "merit."  Even if there were a large number of relevant complaints, the failure to show or even allege that the past complaints had merit or validity is fatal to their claim.  *Gold*, 151 F.3d at 1351.  The Eleventh Circuit held that a City lacked notice when there were ten citizen complaints about the specific issue, but the plaintiff did not establish that the complaints had merit.  *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987).

Although Plaintiff argues that the failure to investigate, reprimand, discipline, train, and/or supervise was the "moving force" behind the use of excessive force, the Complaint fails to contain any allegations that better investigating, reprimanding, disciplining, training, and/or supervising would have prevented Plaintiff's injuries.  *Brooks*, 813 F.2d at 1195.  Therefore, the causal connection, which is a critical

element to Plaintiffs' claim, is absent and Plaintiff's claim for failure to train and/or supervise should be dismissed. Harris, 389 U.S. at 387-91.

Finally, Plaintiff's blanket allegation that appropriate training has not been provided "upon information and belief" falls well short of the mark. In this regard. while "allegations 'upon information and belief' may state a claim after Iqbal and Twombly, the claim must still be based on factual content that makes liability plausible, and not be formulaic recitations of the elements of a cause of action." *Klohs v. Wells Fargo Bank, NA*, 901 F. Supp. 2d 1253, 1259 n.2 (D. Haw. 2012) (internal quotation marks and citation omitted). That is precisely what Plaintiff does here and dismissal is appropriate.

Respectfully submitted this 17th day of September, 2021.

| | **HALL BOOTH SMITH, P.C.** |
|---|---|
| 191 Peachtree Street, N.E. Suite 2900 Atlanta, GA 30303-1775 Tel: (404) 954-5000 Fax: (404) 954-5020 dware@hallboothsmith.com pfriduss@hallboothsmith.com nkinsley@hallboothsmith.com | */s/ R. David Ware* */s/ Phillip E. Friduss* R. DAVID WARE Georgia Bar No. 737756 Phillip E. Friduss Georgia Bar No. 277220 Nicholas A. Kinsley Georgia Bar No. 276862 *Counsel for Defendant City of Atlanta* |

|  |  |
|---|---|
| **City of Atlanta Law Department**<br>55 Trinity Avenue, Suite 5000<br>Atlanta, Georgia 30303<br>(404) 546-4185 *Phone*<br>(404) 588-3239 *Fax* | /s/ Shemia F. Washington<br>Shemia F. Washington<br>Georgia Bar No. 272678<br>Alisha Marie S. Nair, Esq.<br>Georgia Bar No. 806033<br>Joshua S. Foster<br>Georgia Bar No. 169165<br>SFWashington@atlantaga.gov<br>amnair@atlantaga.gov<br>josfoster@atlantaga.gov<br><br>*Co-Counsel for Defendant City of Atlanta* |

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| AMBER JACKSON, | |
|     Plaintiff, | |
| v. | |
| CITY OF ATLANTA, GEORGIA, OFFICER CODY SWANGER, in his individual capacity, and OFFICER JEREMIAH BRANDT, in his individual capacity, | CIVIL ACTION FILE NO. 1:21-cv-02578-MHC |
|     Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT CITY OF ATLANTA, GEORGIA'S MOTION TO DISMISS** with the Court using the CM/ECF System. Notice of this filing will be sent to the below as indicated on the electronic filing receipt.

Harold W. Spence
Mawuli M. Davis, Esq.
Davis Bozeman Law Firm, P.C.
4153-C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
hspence@davisbozemanlaw.com
mdavis@davisbowemanlaw.com
*Counsel for Plaintiff*

Thomas M. Mitchell, Esq.
Richard A. Carothers, Esq.
Angela C. Couch, Esq.
Karen G. Thomas, Esq.
**Carothers & Mitchell, LLC**
1809 Buford Hwy.
Buford, GA 30518
*Counsel for Defendants Officer Cody Swanger and Officer Jeremiah Brandt*

Respectfully submitted this 17th day of September, 2021.

| | |
|---|---|
| | **HALL BOOTH SMITH, P.C.** |
| 191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775<br>Tel: (404) 954-5000<br>Fax: (404) 954-5020<br>dware@hallboothsmith.com<br>pfriduss@hallboothsmith.com<br>nkinsley@hallboothsmith.com | */s/ R. David Ware*<br>*/s/ Phillip E. Friduss*<br>R. DAVID WARE<br>Georgia Bar No. 737756<br>Phillip E. Friduss<br>Georgia Bar No. 277220<br>Nicholas A. Kinsley<br>Georgia Bar No. 276862<br><br>*Counsel for Defendant City of Atlanta* |

28

| | |
|---|---|
| **City of Atlanta Law Department**<br>55 Trinity Avenue, Suite 5000<br>Atlanta, Georgia 30303<br>(404) 546-4185 *Phone*<br>(404) 588-3239 *Fax* | /s/ Shemia F. Washington<br>Shemia F. Washington<br>Georgia Bar No. 272678<br>Alisha Marie S. Nair, Esq.<br>Georgia Bar No. 806033<br>Joshua S. Foster<br>Georgia Bar No. 169165<br>SFWashington@atlantaga.gov<br>amnair@atlantaga.gov<br>josfoster@atlantaga.gov<br><br>*Co-Counsel for Defendant City of Atlanta* |