## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AMBER JACKSON, | |
| Plaintiff, | Civil Action No.: |
| v. | 1:21-cv-02578-MHC |
| CITY OF ATLANTA, GEORGIA; OFFICER CODY SWANGER, in his individual capacity; and OFFICER JEREMIAH BRANDT, in his individual capacity, | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT CITY OF ATLANTA'S SECOND MOTION TO DISMISS

COMES NOW, Plaintiff Amber Jackson, by and through her attorneys, and submits the following Brief in Opposition to the Defendant City of Atlanta's Second Motion to Dismiss ("Second Motion"). For the reasons set forth below, Plaintiff requests that this Court deny the Defendant City of Atlanta's Motion in its entirety.

### SUMMARY OF FACTS OF UNDERLYING LITIGATION

This case arises out an incident which occurred on May 30, 2020 at Lenox Square Mall when Plaintiff Amber Jackson suffered a broken clavicle as a result of

being thrown onto concrete pavement by Defendant Officer Swanger after Defendants Swanger and Brandt stopped her vehicle based on observing her relocate an orange traffic cone several feet so that she could exit the Mall. Ms. Jackson's injuries required her to undergo surgery and subsequent physical rehabilitation. The Defendant officers charged Ms. Jackson with disorderly conduct, a charge that was subsequently dismissed. During the ensuing Internal Affairs investigation, Defendants Swanger and Brandt admitted that they had observed Ms. Jackson commit no crime, that their incident report contained intentionally false information, and that excessive force had been used against Ms. Jackson. This lawsuit ensued.

## SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint sets forth claims for unlawful seizure of her person, excessive force in violation of federal law, Monell liability against Defendant City of Atlanta (sometimes referred to as "Defendant COA"), and various state law claims against the individual Defendant officers. Of the various counts of the Plaintiff's First Amended Complaint, Counts IV, V, and VI relate to Defendant City of Atlanta. It is these counts that are the subject of Defendant COA's motion to dismiss. The Plaintiff submits that her First Amended Complaint is adequately plead as to Counts IV, V, and VI and sets forth facts that plausibly support her claim for relief as to Defendant COA.

## SUMMARY OF THE DEFENDANT COA'S ARGUMENT

Defendant COA argues that the Plaintiff's pleadings fail to state a claim against it as to which relief can be granted and that the Plaintiff's claims should be dismissed in their entirety as to it.

## THE RELEVANT FACTS

It is an unassailable fact that on May 30, 2020 Defendant Officer Swanger forcefully threw Amber Jackson onto the concrete pavement near Lenox Square Mall [Doc. 32 at ¶33]. It is also a fact that Ms. Jackson suffered a completely broken right clavicle as a result [Doc. 32 at ¶35]. Defendant Officer Swanger was heard bragging several times on body cam video footage that he "planted" Ms. Jackson on her face [Doc. 32 at ¶64]. It is a further fact that Ms. Jackson's injuries required her to have surgery[1] and undergo subsequent rehabilitation. It is also a fact that Ms. Jackson's injuries, surgery, and rehabilitation prevented her from working. It is an admitted fact that Defendant Officer Swanger initially lied about why he stopped Ms. Jackson's vehicle before finally admitting to his superiors that he stopped her vehicle only because he had observed her move an orange traffic cone to exit Lenox Square Mall and not because he had observed her commit any crime [Doc. 32 at ¶63]. Defendant Officer Swanger verbally hurled assorted vulgar, profane, and pejorative references at Ms. Jackson [Doc. 32 at ¶71]. Defendant Officers Swanger

---

[1] Ms. Jackson recently had a second surgery on her right shoulder for injuries Defendant Officer Swanger caused.

and Brandt falsely wrote in their report that Ms. Jackson's fiancé told them he had come to Lenox Square Mall to engage in rioting and looting [Doc. 32 at ¶¶76, 77, 78]. Defendant Officers Swanger and Brandt ultimately admitted, after the fact, that neither Ms. Jackson, nor her fiancé, who was the driver of her vehicle, had broken any law that authorized the false criminal charges they levied against Ms. Jackson and her fiancé [Doc. 32 at ¶¶ 60, 74]. Finally, Defendant Officer Swanger admitted that he engaged in maltreatment and/or used unnecessary force against Ms. Jackson in the incident at issue in this case [Doc. 32 at ¶53].

DEFENDANT CITY OF ATLANTA'S MOTION TO STRIKE

Defendant COA also moved to strike Plaintiff's First Amended Complaint. In an Order entered on November 30, 2021 [Doc. 52] the Court allowed filing of the First Amended Complaint, rendering moot Defendant COA's Motion to Strike.

BRIEF RESPONSE TO "FACTS – WHAT THE AMENDED COMPLAINT DOES AND DOES NOT SAY"

Defendant COA complains that the Plaintiff's Amended Complaint fails to adequately put "the Court on notice" of "the atmosphere enveloping the City of Atlanta on May 29 and May 30, 2020" [Doc. 45-1 at page 7]. In this regard, the Defendants note that "Lenox Square had been vandalized and burgled" [Doc. 45-1 at page 7]. Notably, Defendant COA does not contend that at the time of the events involving Plaintiff Amber Jackson that are the subject of this lawsuit, Lenox Square "was under siege by violent protesters and others" or was being "vandalized and

burgled" [Doc. 45-1 at page 7]. In fact, the First Amended Complaint specifically notes there were no protesters present at the time she arrived at Lenox Square Mall.

Recognizing that its Defendant officers, who to the best of the Plaintiff's knowledge and belief remain employed by the City, had no lawful basis to engage in the unconstitutional misconduct perpetrated against the Plaintiff, Defendant COA beseeches the Court to expand the boundaries of constitutional analysis based on "the uniqueness of the critical moment in history" [Doc. 45-1 at page 7]. Without citing legal authority for this proposition Defendant COA decrees that "it is imperative Plaintiff set out these factors in a Fourth Amendment case, where the Constitutional analysis requires the Court to review all the surrounding circumstances giving rise to the use of force" [Doc. 45-1 at page 7]. Not surprisingly, Defendant COA cites no legal authority entitling the Court to create a new level of constitutional analysis that elevates the Plaintiff's pleading burden if the legal matter at issue relates to a "critical moment in history."

Defendant COA asks the Court to take judicial notice of events that had transpired in downtown Atlanta in the late evening hours of May 29, 2020. This is a mere effort at misdirection so that the Court does not consider the facts as set forth in the Plaintiff's Complaint, facts that must be accepted as true in evaluating a motion to dismiss, facts that show that at the time of the incident that is the subject

of this lawsuit that Lenox Square was deserted, had no protesters whatsoever, and was not the scene of any violence [Doc. 32 at ¶¶ 17-19].

In evaluating the merits of its Second Motion, Defendant COA asks the Court to take judicial notice of "the social emergency and level of violence that was going on inside the City of Atlanta at all times relevant to this action" [Doc. 45-1 at page 8]. Interestingly, Defendant COA altogether fails to ask the Court to take into account the total absence of violence at Lenox Square Mall at the time of the events forming the basis of Plaintiff lawsuit. Notably, Plaintiff's amended lawsuit does not refer to any events going on hours earlier in downtown Atlanta that would have informed the Defendant officers' interaction with her. What the amended lawsuit does refer to is the total absence of protesters and any accompanying violence or looting at the time of the events that are the subject of this lawsuit.

Defendant COA attached to its Second Motion to Dismiss Exhibits A, B, C, and D, asking the Court to take judicial notice of them and of "the social emergency and level of violence that was going on inside the City of Atlanta at all times relevant to this action" [Doc. 45-1 at page 8]. It is unclear, and Defendant COA's Motion/Brief fail to point out how events not involving the Plaintiff that occurred hours earlier and in some instances miles away, render the Plaintiff's Amended Complaint defective for purposes of a motion to dismiss analysis.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A. The Court Should Not Strike the Amended Complaint

For the reasons addressed above, Defendant COA's Motion to Strike the amended complaint is now moot and requires no counter-argument by the Plaintiff.

### B. Motion to Dismiss Standard

Defendant COA's Second Motion is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Rule provides that in defense to a pleading a party may assert by motion that the pleading is legally defective due to its "failure to state a claim upon which relief can be granted."

A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all well-pleaded facts as true, and draw all reasonable inferences in favor of the plaintiff, <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544, 556-57 (2007). A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein, <u>Id</u>.

Relatedly, Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Konair US, LLC v. DGI II, LLC</u>, Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *7 (N.D. Ga. Jan. 14, 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." Konair US, LLC v. DGI II, LLC, Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *8 (N.D. Ga. Jan. 14, 2021). Notably, there is no heightened requirement of fact pleading of specifics – only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570.

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007). To the contrary, all well-pleaded allegations in the complaint must be construed as true and in the light most favorable to the Plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007); Lowell v. American Cyanamid Co., 177 F.3d 1228, 1229 (11th Cir.1999). The Plaintiff also enjoys the

benefit of all reasonable inferences from those allegations, <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010). The court's inquiry on a Rule 12(b)(6) motion to dismiss is "context-specific," and the complaint must be evaluated in its entirety, *See* <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

Even when considered under the two-prong approach used by the Supreme Court in analyzing the legal sufficiency of a complaint, Plaintiff Jackson's amended complaint is sufficient to survive a motion to dismiss. The two-pronged approach requires a court to first "eliminate any allegations in the complaint that are merely legal conclusions," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," <u>Iqbal</u> at 680. It is only the "conclusory nature" of the allegations of the complaint "that disentitles them to the presumption of truth," <u>Iqbal</u>, 556 U.S. at 681. Second, the court should assume that all well-pleaded factual allegations are true and then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief," <u>Iqbal</u> at 681. When considered under these standards, Counts IV, V, and VI of the Plaintiff's First Amended Complaint sufficiently meet the pleading requirements of Rule 8.

## C. Plaintiff's <u>Monell</u> Claims Should Not Be Dismissed

The Plaintiff alleges in her First Amended Complaint that Defendant COA should be held liable for her injuries, harms, and losses arising out of: 1) Count IV

– Defendant COA failed to conduct meaningful investigations and undertake meaningful corrective actions relating to claims by citizens of arrests by APD ("Atlanta Police Department") officers, often using excessive force, when citizens were exercising or attempting to exercise their First Amendment rights; 2) Count V – Defendant COA failed to conduct meaningful investigations into claims by citizens of excessive force by APD officers over a nearly twenty year period; and 3) Count VI – Defendant COA failed to adequately train its officers to intervene to prevent other officers from utilizing excessive force against citizens in violation of those citizens' constitutional rights. Plaintiff contends that these policies, practices, customs, and actions by Defendant COA were the driving force behind the direct violation of her constitutional rights by Defendant Officers Swanger and Brandt and as such, Defendant COA is legally liable for the injuries, harms, and losses she suffered.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. (citing Twombly, 550 U.S. at 556). When considered under these standards

Defendant COA's Motion to Dismiss as to Counts IV, V, and VI of the Plaintiff's First Amended Complaint must be denied.

## 1. Monell Basics for This Case

Defendant COA begins a section of its Brief titled "Monell Basics for This Case" [Doc. 45-1 at page 15] by citing general principles of law applicable to <u>Monell</u> claims. Defendant COA begins its discussion by correctly noting that under 42 U.S.C.A. § 1983 it cannot be held legally liable for the misconduct of APD officers based on the doctrine of respondeat superior [Doc. 45-1 at page 15]. A review of the Plaintiff's Complaint shows that the claims in Counts IV, V, and VI do not rest or purport to rest on respondeat superior liability. Rather, Count IV – Plaintiff assets legal liability based on Defendant COA's failure to conduct meaningful investigations and undertake meaningful corrective actions relating to claims by citizens of arrests by APD officers, often using excessive force, when citizens were exercising or attempting to exercise their First Amendment rights. Count V seeks to impose legal liability against Defendant COA under § 1983 based on its alleged longstanding failure to conduct meaningful investigations into allegations wherein APD officers were accused of using excessive force without provocation or justification. Likewise, Count VI seeks to impose legal liability under § 1983 for Defendant COA's failure to train and/or supervise APD officers as to the

longstanding Fourth amendment requirement to intervene to stop the use of excessive force by a fellow officer if in a position to do so.

Plaintiff largely agrees with the Defendant COA's recitation of the basic law governing a § 1983 claim against a municipality [Doc. 45-1 at pages 15-17]. A municipality may be held liable under § 1983 when the deprivation at issue was undertaken pursuant to a municipal custom, policy, or practice. The parties also agree that municipal liability may be based on a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by a final policymaker. The existence of this policy, practice, or custom may be established by showing a persistent and widespread practice and the government's actual or constructive knowledge of that practice. This widespread practice, when sufficiently longstanding and/or well-settled, need not be authorized by written law or express municipal policy. In sum, liability may attach against a municipality where the policy, custom, or practice is the "moving force behind the constitutional violation," City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 2434 (1985). It is this "moving force" that establishes the necessary causal link between the custom, policy, or practice and the constitutional deprivation, Tuttle, 105 S.Ct. at 2435-36.

Finally, the Plaintiff agrees that a municipal official who has "final policymaking authority" in a certain area of the city's business may by his or her action subject the government to §1983 liability when the challenged action falls

within that authority. Relatedly, such final policymaking authority would apply to Chiefs of Police of the City of Atlanta.

The Plaintiff maintains that Counts IV, V, and VI of her First Amended Complaint meet Rule 8's pleading requirements and are not subject to dismissal.

## 2. Count IV of the Plaintiff's First Amended Complaint

The Plaintiff's First *Monell* claim is stated in Count IV of her First Amended Complaint. This Count, relating to excessive force resulting from warrantless arrests and unlawful investigative stops alleges that application of excessive force within the Atlanta Police Department ("APD") was tantamount to a custom, policy, or final policymaking authority action, as a result of Defendant COA: 1) failing to conduct meaningful investigations or undertake meaningful corrective actions relating to claims by citizens of arrests and stops by APD officers, using excessive force, when citizens were exercising or attempting to exercise their First Amendment rights[2]; 2) failing to provide the mandatory training required by the <u>Calhoun</u> Order concerning constitutional limits on warrantless arrests and investigative stops; and 3) failing to

_____

[2] Defendant COA disputes that Plaintiff Jackson was exercising any First Amendment rights in this incident. The facts, including the expressed reason why Ms. Jackson and her fiancé were at Lenox Square Mall, refute this contention. Indeed, the false written report submitted by Defendant Officers Swanger and Brandt specifically states that Ms. Jackson's fiancé told them they had come to Lenox Square Mall in connection with the downtown Atlanta protests to riot and loot. According to body worn camera video footage, however, Ms. Jackson and her fiancé advised the Defendant Officers that they had come to Lenox Square Mall to participate in a peaceful protest [Doc. 32 at ¶¶ 76-78].

provide the mandatory training required by the <u>Anderson</u> Order concerning constitutional limits on interference with citizen's exercising certain First Amendment rights.

Count IV of the Plaintiff's First Amended Complaint is presented in paragraphs 114 – 139. Under the two-prong analysis of the sufficiency of the Plaintiff's First Amended Complaint, the first prong of that analysis would require the Court to "eliminate any allegations in the complaint that are merely legal conclusions," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("first prong analysis"). This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," <u>Iqbal</u> at 680. It is only the "conclusory nature" of the allegations of the complaint "that disentitles them to the presumption of truth," <u>Iqbal</u>, 556 U.S. at 681.

Defendant COA's Motion does not specifically identify which of the paragraphs between 114 and 139, inclusive, it contends constitute mere legal conclusions or formulaic recitations of the elements of the Plaintiff's cause of action. What Rule 12(b)(6) seeks to prohibit is "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions," <u>Iqbal</u>, 556 U.S. at 678-679. "Naked assertions devoid of further factual enhancements" are what Rule 12(b)(6) seeks to eliminate through a motion to dismiss, <u>Iqbal</u>, 556 U.S. at 678. Here, the

allegations in Count IV of the First Amended Complaint assert specific facts relevant to and supportive of the cause of action to which they relate.

To the extent that Count IV asserts any legal conclusions it permissibly does so to "provide the framework of [the] complaint," Iqbal, 556 U.S. at 679. If providing the framework, however, the legal conclusions "must be supported by factual allegations," Id. Here, Count IV of the Plaintiff's First Amended Complaint is supported by ample factual allegations.

Defendant COA's Brief takes issue with the facts cited in the Plaintiff's First Amended Complaint and consistently conflates arguments it might offer on summary judgment or at trial with minimum pleading requirements. Clearly, the non-framework paragraphs of Count IV assert specific facts, not legal conclusions.

The question now before the Court addresses the second prong of the two-prong analysis and asks whether the Plaintiff's First Amended Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678 ("second prong analysis").

In support of the claim in Count IV that there was a policy or a widespread and persistent practice or custom amounting to a policy, Plaintiff cites numerous facts that show Defendant COA's actual or constructive knowledge of the policy, practice, or custom, including through Defendant COA's final policymaking

authorities in law enforcement, and the City's deliberate indifference toward such practice or custom. The policy, practice, or custom at issue in Count IV relates to: 1) Defendant COA's failure to conduct meaningful investigations or undertake meaningful corrective actions relating to claims by citizens of warrantless stops and arrests by APD officers that resulted in the use of excessive force when citizens were exercising or attempting to exercise their First Amendment rights; and 2) Defendant COA's failure to provide the mandatory training required by the <u>Calhoun</u> and <u>Anderson</u> Orders that would have addressed the issue of the constitutional bounds of the use of force generally and in particular in connection with citizens' exercise of their First Amendment rights.

Included among the facts cited in support of Count IV are the following:

1) The lawsuit of <u>Calhoun v. Pennington</u>[3] in which the City's chief law enforcement policy maker and administrator of APD discipline was named as a party defendant (settled in 2012) by patrons in a bar who were exercising, in part, their First Amendment right and who were unlawfully arrested and subjected to excessive force by APD officers [Doc. 32 at ¶123];

2) In <u>Calhoun v. Pennington</u>, Defendant COA agreed to revoke or amend unconstitutional policies regarding warrantless searches, arrests, and

---

[3] Richard Pennington was acting Chief of Police for the City of Atlanta from 2002 to July 2010 [Doc. 32 at ¶117].

investigative stops resulting in the use of excessive force [Doc. 32 at ¶123];

3) In <u>Calhoun v. Pennington</u>, Defendant COA agreed to conduct mandatory training for APD officers regarding changes outlined in the settlement agreement, including relating to warrantless searches, arrests, and investigative stops to prevent, among other things, the use of excessive force [Doc. 32 at ¶123];

4) In <u>Calhoun v. Pennington</u>, Defendant COA agreed to provide recurring training to its officers every two years on changes outlined in the settlement agreement, including relating to warrantless searches, arrests, and investigative stops, to prevent, among other things, the use of excessive force [Doc. 32 at ¶123];

5) In March 2015 Defendant COA was found in contempt in <u>Calhoun v. Pennington</u>, by the District Court for failure to revoke or amend unconstitutional APD policies regarding warrantless searches, seizures, arrests, and investigative stops [Doc. 32 at ¶127];

6) In March 2015, in <u>Calhoun v. Pennington</u>, Defendant COA was ordered to be monitored by <u>Calhoun</u> Plaintiffs' counsel for a period of six years the training required of APD officers, including relating to warrantless searches, arrests, and investigative stops [Doc. 32 at ¶129];

7) A review of Defendant Officer Swanger's APD employment file does not show that he received the training required under the District Court's March 2015 contempt order in <u>Calhoun v. Pennington</u>, despite having been employed as a sworn officer with the City of Atlanta's Police Department since January 14, 2016 [Doc. 32 at ¶130];

8) A review of Defendant Officer Swanger's file with the Georgia Peace Officers Standards and Training Council does not show that he received the training required under the District Court's March 2015 contempt order in <u>Calhoun v. Pennington</u>, despite having been employed as a sworn officer with the City of Atlanta's Police Department since January 14, 2016 [Doc. 32 at ¶132];

9) A review of Defendant Officer Brandt's APD employment file does not show that he received the training required under the District Court's March 2015 contempt order in <u>Calhoun v. Pennington</u>, despite having been employed as a sworn officer with the City of Atlanta's Police Department since August 24, 2016 [Doc. 32 at ¶131];

10) A review of Defendant Officer Swanger's file with the Georgia Peace Officers Standards and Training Council does not show that he received the training required under the District Court's March 2015 contempt order in <u>Calhoun v. Pennington</u>, despite having been employed as a sworn officer with

the City of Atlanta's Police Department since August 24, 2016 [Doc. 32 at ¶133];

11)    In <u>Anderson v. City of Atlanta</u>, Defendant COA agreed in 2012[4], as part of the settlement of the lawsuit, to make changes in its officer training regarding citizens' exercise of their First Amendment right to non-obstructively film police activity, to specifically include permanent revision of policies interfering with a citizen's right to record police activity, to make such interference a terminable offense, and to require mandatory in-person training of all APD officers every two years regarding the new filming policies;

12)    In March 2015, Defendant COA was found by the District Court in <u>Anderson v. City of Atlanta</u>, to be in contempt of the settlement agreement it reached in that it failed to implement the required standard operating procedure changes regarding police interference with a citizens' First Amendment right to non-obstructively record police activity and failed to conduct the mandatory required in-person training of all APD officers every two years regarding police interference with citizen's right to record;

13)    Plaintiff's First Amended Complaint recounts the November 2014

---

[4] By 2012, George Turner was acting Chief of Police for the City of Atlanta, a position he held from July 2010 through 2016 [Doc. 32 at ¶117].

unlawful arrest of Corey Toole for exercising his First Amendment right to peacefully protest, a case in which both the District Court and the Eleventh Circuit Court of Appeals found that Corey Toole's Fourth Amendment rights had been violated as he was arrested without probable cause or arguable probable cause [Doc. 32 at ¶125];

14)     Plaintiff's First Amended Complaint also recounts the July 26, 2016 unlawful arrest of Kentrevious Hightower for exercising his right to peacefully protest, a constitutional violation that resulted in a lawsuit the City of Atlanta ultimately settled [Doc. 32 at ¶128];

15)     According to the First Amended Complaint, Defendant COA was in violation of the <u>Calhoun</u> contempt order regarding mandatory APD officer training relating to the constitutional limits of the use of force in connection with warrantless searches, arrests, and investigative stops, along with training in citizens' exercise of their First Amendment rights, with respect to Defendant Officer Swanger in 2016, 2017, 2018, 2019, 2020, and 2021 [Doc. 32 at ¶¶130, 132]. This period spans three Chief of Police administrations, as George Turner was acting Chief of Police from July 2010 through 2016; Erika Shields was the acting Chief of Police for the City of Atlanta from the beginning of 2017 until June 2020, and was succeeded by Rodney N. Bryant, who presently serves as Chief of Police [Doc. 32 at ¶117].

16)     According to the First Amended Complaint, Defendant COA was in violation of the Calhoun contempt order regarding mandatory APD officer training relating to the constitutional limits of the use of force in connection with warrantless searches, arrests, and investigative stops, along with training in citizens' exercise of their First Amendment rights with respect to Defendant Officer Brandt in 2016, 2017, 2018, 2019, 2020, and 2021 [Doc. 32 at ¶¶131, 133]. This period spans three Chief of Police administrations, as George Turner was acting Chief of Police from July 2010 through 2016; Erika Shields was the acting Chief of Police for the City of Atlanta from the beginning of 2017 until June 2020, and was succeeded by Rodney N. Bryant, who presently serves as Chief of Police [Doc. 32 at ¶117].

The Plaintiff's First Amended Complaint points out that the Chief of Police for the City of Atlanta is "the final policymaker for the City of Atlanta with final decision-making authority with regard to training and supervision of APD officers" and is also responsible for "managing, directing, and controlling the operations, disciplinary process, and administration of the department" [Doc. 32 at ¶116]. As such, the succession of Chiefs of Police for Defendant COA would have been responsible for assuring that Defendant Officers Swanger and Brandt had the mandatory training required by the Calhoun and Anderson Orders.

Based on the above allegations in the First Amended Complaint, Defendant COA was a party to multiple settlement agreements and court orders in which it was required to train its officers in how to constitutionally interact with citizens, including when citizens were exercising their First Amendment rights. It is undisputed that Defendant COA over a period of years failed to adhere to the settlement agreements or court orders. Additionally, from 2016 to 2021 Defendant COA failed to train either Defendant Swanger or Defendant Brandt as required under the Calhoun contempt order of March 2015. Certainly, Defendant COA does not contend in its Motion/Brief and could not reasonably contend that had Defendants Swanger and Brandt received the mandatory training required under the Calhoun and Anderson Orders that their interaction with Ms. Jackson might have had a vastly different outcome. In any event, this is a question for a jury to decide and not one contemplated by the limited ambit of a motion to dismiss.

Plaintiff has demonstrated with respect to Count IV of her First Amended Complaint that it is facially plausible as its content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." Konair US, LLC v. DGI II, LLC, Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *8 (N.D. Ga. Jan.

14, 2021). Plaintiff's First Amended Complaint clearly surmounts this pleading hurdle as to Count IV.

### 3. Count V of the Plaintiff's First Amended Complaint

The Plaintiff's Second *Monell* claim is stated in Count V of her First Amended Complaint. This Count alleges that Defendant City failed to conduct meaningful investigations or undertake meaningful corrective actions relating to claims by citizens of the use of excessive force by APD officers.

Count V of the Plaintiff's First Amended Complaint is presented in paragraphs 140 – 163. Defendant City's Motion does not specifically identify, under the first prong analysis, which of the paragraphs between 140 and 163, inclusive, under the first prong analysis, it contends constitute mere legal conclusions or formulaic recitations of the elements of the Plaintiff's cause of action and that are disentitled to the presumption of truth. Here, the allegations in Count V of the First Amended Complaint assert specific facts relevant to and supportive of the cause of action to which they relate.

The question now before the Court addresses the second prong of the two-prong analysis and asks whether the Plaintiff's First Amended Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal at 678.

In support of the claim in Count V that there was a policy or a widespread and persistent practice or custom amounting to a policy, Plaintiff cites numerous facts that show Defendant COA's actual or constructive knowledge of the policy, practice, or custom and the City's deliberate indifference toward such practice or custom. The policy, practice, or custom at issue in Count V relates to Defendant COA's failure to conduct meaningful investigations or undertake meaningful corrective actions relating to claims by citizens of the use of excessive force by APD officers.

### Plaintiff Has Properly Pled a Claim for Failure of Defendant COA to Conduct Meaningful Investigations or to Take Corrective Actions

In Count V, the First Amended Complaint alleges that the APD, under the leadership of a succession of Chiefs of Police, from 2002 to the May 30, 2020 date of the misconduct alleged to be at issue in this action, failed to conduct meaningful investigations into allegations of excessive force, and routinely rejected recommendations from the Atlanta Citizen Review Board recommending that discipline be imposed against APD officers for using excessive force, thereby sending a message to APD officers that allegations of excessive force would not be critically investigated, and thereby leading to no discipline or slap on the wrist discipline against the affected officers and thus implicitly encouraging them to engage in acts of excessive force [Doc. 32 at ¶¶ 144, 147-148]. This failure is the alleged moving force behind the constitutional violation.

Defendant COA begins its argument by incorrectly stating that the Plaintiff's claims for failure to conduct meaningful investigations are based on the contention that the investigations did not utilize Computer Voice Stress Analysis (CVSA) in instances where no audio or video of the force incident is available. More correctly characterized, the Plaintiff simply refers to CVSA as one of the infrequently utilized tools available to assist in the conduct of meaningful investigations.

In support of her claim that the failure to conduct meaningful use of force investigations was a customary pattern and practice within the APD that was widespread and persistent the Plaintiff cites seven use of force incidents that occurred between 2003 and 2015. Additionally, the Plaintiff cites the May 30, 2020 incident that is the subject of this lawsuit as an additional incident not subject to meaningful investigation.[5] Thus, the duration of these cited incidents covers the seventeen year period from 2003 to 2020.

Defendant COA attempts to counter the ten cited incidents by dismissing them as conclusions without relevant probative value to this case. The main argument Defendant COA makes against the "moving force" value of the cited incidents is that they are too dated. As pointed out above, these incidents extend from 2003 to 2020.

[5] On May 30, 2020, Erika Shields was the acting Chief of Police for the City of Atlanta.

The probative value of the ten cited incidents is further diminished Defendant COA asserts because all the prior incidents occurred before Chief Shields assumed command of the APD. Of course, the May 30, 2020 incident and subsequent non-investigation of the use of excessive force occurred under Chief Shields's watch.

Defendant COA argues that the time between the subject occurrence and the cited prior incidents renders them constitutionally irrelevant in establishing the existence of a custom, policy, or practice for purposes of <u>Monell</u> liability. One case Defendant COA cites is <u>Thomas v. Westchester County</u>, 2013 U.S. Dist. LEXIS 93697 (S.D.N.Y. July 3, 2013) in which prior misconduct allegations two years old were deemed non-probative of a <u>Monell</u> claim. The basis of the Court's ruling was that the prior incident allegations did not involve the same type of misconduct as alleged in the lawsuit at issue there (allegations of deprivation of medical care not supported by prior instances of failure to treat an inmate's infectious disease and lack of dental care for an inmate). The instant Plaintiff's underlying claims and the cited prior incidents all involve excessive force. Another case cited by Defendant COA is also inapposite, <u>Rodriguez v. County of Westchester</u>, 2017 WL 118027 (S.D.N.Y. 2017). The finding that the cited prior incidents were not relevant for purposes of <u>Monell</u> liability turned on the fact that different private companies rendered medical services at the jail at the time of the cited prior incidents. Here, there is a continuity of responsibility as the office of the City of Atlanta's Chief of

Police was the final policymaker at the time of all the cited prior incidents and at the time of the subject occurrence. Defendant COA also cites <u>Khoury v. Miami-Dade County School Board</u>, 2021 U.S. App. LEXIS 20070 (11th Cir. July 7, 2021) as finding that a three year gap between a prior and subject occurrence rendered the prior occurrence non-probative for <u>Monell</u> liability purposes as there was no evidence that the allegedly unconstitutional practices continued to exist. Here, Defendant Gardner's continuing presence on the APD provides evidence, to be viewed liberally in favor of the Plaintiffs, that the unconstitutional practice, custom, or policy by Defendant City of Atlanta in failing to conduct meaningful investigations continued from 2003 through May 30, 2020. Neither is <u>Church v. City of Huntsville</u>, 30 F.3d 1332 (11th Cir. 1994) helpful to Defendant COA's argument, as the Court held there that a 1991 study's single use of the word "rousted" was "not conclusive" as to the existence of the City's effort to expel the homeless in 1993.

The facts of the underlying case show that the failure to conduct meaningful investigations of claims of excessive force against APD officers continued unabated through successive Chief of Police Administrations from 2003 through 2020. None of the cases cited by Defendant COA contains any such continuity of service by one office [Chief of Police] and an accompanying continuity in that office not conducting meaningful investigations despite multiple claims of excessive force.

The law does not require, at the pleading stage, a mini-trial on each cited instance of prior failure to meaningfully investigate the use of excessive force. On a motion dismiss the Court must ask, when liberally construing the complaint in favor of the Plaintiff, whether it appears beyond doubt that the plaintiff can prove no set of facts in support of their claim that would entitle then to relief. This burden of proof is on Defendant COA as movant. Defendant COA has failed to carry this burden and its Motion to Dismiss must be denied. The Plaintiff has plausibly alleged a § 1983 claim predicated on Defendant COA's failure to conduct meaningful investigations in the face of allegations of excessive force. Count V of the Plaintiff's Complaint meets the Iqbal and Twombly pleading standards and is not subject to dismissal.

In further support of Count V of her Complaint, Plaintiff cites statistics from the Atlanta Citizen Review Board ("ACRB"). Established in 2007, the ACRB is "designed to provide citizen oversight of misconduct accusations against sworn members of the police and corrections departments in the City of Atlanta" through the creation of "a credible, independent forum where complaints and accusations can be addressed" [Doc. 32 at ¶¶150, 151]. The ACRB has "the power to recommend that the Chief of Police take certain actions: including, but not limited to recommending specific actions directed at individual officers (such as hiring, firing, demotion, punishment, or commendation" [Doc. 32 at ¶154]. Despite the role of the

ACRB, "the Chief of Police will retain full and ultimate authority, power, discretion, right, privilege, and responsibility to set disciplinary policies, or take lawful actions her or she deems appropriate relative to the Department (under the provisions of the City of Atlanta Code of Ordinances)" [Doc. 32 at ¶155].

Plaintiff's First Amended Complaint discusses the role of the Chief of Police in ACRB decisions from 2016 to 2019, inclusive [Doc. 32 at ¶¶156-159]. For each of these years the ACRB issued an annual report summarizing the actions of the Chief with respect to ACRB findings. For 2016 the annual report criticized the "Atlanta Police Department's lack of discipline on ACRB sustained complaints (complaints filed by citizens, discussed and reviewed by the ACRB and deemed credible or true based on the evidence obtained by experience[d] investigators" [Doc. 32 at ¶156]. That same report went on to note that APD's "failure to provide a response that has a legal or factual basis for disagreements compounds, frustrates, and weakens the intent of the ACRB ordinance' [Doc. 32 at ¶156]. The 2017 ACRB annual report complained that "APD responses to ACRB sustained complaints [including sustained excessive force complaints] for year-end reports have been in the low 20% range for several years" [Doc. 32 at ¶157]. For 2018, the annual ACRB report complained that "at the end of 2018 the APD agreed with 17% of the ACRB sustained complaints" presenting "a challenge that must be resolved" [Doc. 32 at ¶158]. Finally, the 2019 report noted that excessive force complaints were among

the top three citizen complaints and most involved allegations of "strikes to the face, head and body, grabbing, shoving, pushing, dragging, stomping, and kicking" [Doc. 32 at ¶159]. Acknowledging frustration in carrying out its oversight efforts, the ACRB's 2019 report noted that the 31% agreement rate, while still low, was "quite an improvement from previous years" [Doc. 32 at ¶159].

Plaintiff's First Amended Complaint alleges that APD's routine rejection of ACRB sustained recommendations, including complaints relating to excessive force, through a succession of Chiefs of Police, with insufficient factual or legal justification for rejecting the ACRB's recommendations allowed officers to avoid discipline and accountability, thereby communicating to the offending officers that their use of excessive force would routinely be supported by APD without consequence or recourse [Doc. 32 at ¶¶ 160-162].

In light of the ACRB-related facts and other incident-related facts cited in support of Count V Plaintiff submits that she has pleaded sufficient factual content to allow the court to draw the reasonable inference that Defendant COA is liable for the misconduct alleged. Count V offers enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. As such, Count V meets the Twombly and Iqbal pleading requirements and should be sustained.

### 4. Count VI of the First Amended Complaint

Count VI of the First Amended Complaint alleges that Defendant COA failed to train and/or supervise its police officers regarding their clearly established affirmative duty in the Eleventh Circuit that the Fourth Amendment required them to intervene to stop the use of excessive force by a fellow officer against a citizen when in a position to do so [Doc. 32 at ¶165]. In support of these allegations the Plaintiff cites a number of failure to intervene incidents from 2002 to the May 30, 2020 incident that is the subject of this lawsuit in which APD officers were alleged to have used excessive force when Defendant COA took no action to investigate, discipline, supervise, or train fellow APD officers who were present during administration of the excessive force regarding their constitutional duty to intervene to stop the use of excessive force against citizens [Doc. 32 at ¶ 169].

Defendant COA argues that Count VI of the Plaintiff's Complaint should be dismissed for five reasons: first, because Defendant Officer Brandt was not in a position to intervene to stop any alleged excessive force by Defendant Officer Swanger; second, because Plaintiff has failed to properly plead Monell liability; third, because the Plaintiff failed to present evidence that Defendant COA knew of the need to train and/or supervise concerning the duty to intervene; fourth, because none of the prior incidents cited put Defendant COA on notice of the need to train; and finally, because the cited incidents did not occur under the regime of former Chief Erika Shields.

## No Requirement That Prior Incidents Involve Chief Shields

Defendant COA argues that its Motion to Dismiss should be granted because none of the prior incidents cited occurred under the watch of Chief Shields, the Chief of Police at the time of the May 30, 2020 occurrence. Defendant COA has cited no case law or other authority for this proposition.

Defendant COA's argument ignores a material and well-pleaded allegation made in the Plaintiff's Complaint. Notably, Defendant COA has not denied that as a result of this May 30, 2020 incident the City of Atlanta failed to investigate Defendant Officer Brandt for failing to intervene in the application of excessive force that Defendant COA found to have occurred and that Defendant Officer Swanger admitted to have occurred [Doc. 32 at ¶¶ 52-53, 179-180]. As such, the same failure to train and/or supervise which the Plaintiffs demonstrated through the prior cited incidents persisted even at the time of and after the subject occurrence. Therefore, to the extent the law can be interpreted as requiring the Chief of Police at the time of the subject occurrence to have been a part of the failure to train/intervene that requirement has been satisfied as Chief Shields assumed the helm of the APD beginning in 2017 [Doc. 32 at ¶117].

## Whether Defendant Officer Brandt Had Sufficient Time to Intervene is a Jury Question, Not One to Be Decided As a Matter of Law

Defendant COA argues that given the rapid development of events Defendant Officer Brandt lacked sufficient time to intervene to prevent Swanger's use of

excessive force even if he had desired to do so. To this point neither Swanger nor Brandt has been deposed. It is presently unknown what either might say about the decision for both to emerge from their vehicle with weapons drawn and aimed at Ms. Jackson and her fiancé, though both subsequently acknowledged that they had observed no crime being committed. It is presently unknown whether Brandt should have anticipated Swanger's violent conduct given his angry and profane harangue of Ms. Jackson as Swanger approached her, despite the fact that neither Swanger nor Brandt had witnessed a crime being committed. Even when Swanger subsequently boasted several times to Brandt about face-planting Ms. Jackson, Brandt remained both mute and inactive. Whether, under the totality of the circumstances, Brandt should have intervened or could have intervened is not a question that can be decided on a motion to dismiss, but should be left to be further developed in discovery.

### Defendant COA Had Longstanding Knowledge of its Need to Train and/or Supervise re: the Duty to Intervene

Defendant COA seeks dismissal of Count VI under Rule 12(b)(6), failure to state a claim upon which relief can be granted. Consideration of such a motion requires the trial court to accept all the material allegations of the Plaintiffs' Complaint as true and to liberally construe the Complaint in favor of the Plaintiff, Fundiller v. Cooper City, 777 F.2d 1436, 1439 (11th Cir. 1985). Dismissal is not authorized where the complaint "pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal at 678.

In the instant case, Defendant COA does not dispute a number of material and well-pleaded allegations in the Plaintiff's Complaint, including that not until July 2020 did the City of Atlanta implement a policy "instruct[ing] APD officers to intervene in another officer's use of excessive force as constitutionally required" [Doc. 32 at ¶175]. This belated instruction followed by more than three decades the foundation of the Eleventh Circuit's acknowledgment in Ensley v. Soper, 142 F.3d 1402, 1407 (1998) that "if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983," (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (1986).

Based on the above-cited case law authority Defendant COA should have been aware for more than thirty years prior to the subject occurrence that its officers had a duty to intervene when observing a fellow officer violate the constitutional rights of a citizen and the observing officer was in a position to intervene. Given the longstanding applicability of the duty to intervene to officers in the Eleventh Circuit, Defendant COA had a duty to train and/or supervise APD officers in this important duty, but until July 2020 failed to implement a policy even requiring adherence to such a duty. A court could certainly reason that this failure

to train was properly pleaded as the moving force (factual content) behind the Count VI violation, thus allowing a court to draw the reasonable inference that Defendant COA is liable for the misconduct alleged.

 Count VI of Plaintiff's First Amended Complaint Properly Pleads a Monell Claim

Where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming constitutes a city policy or custom that is actionable under § 1983, City of Canton v. Harris, 489 U.S. 378, 389 (1988). Here, the First Amended Complaint alleges that the City of Atlanta failed to train its employees in the need to intervene when they observed a fellow officer violating a citizen's constitutional right, including the use of excessive force against citizens. Such a shortcoming constitutes a city policy or custom that is actionable under § 1983 as it was the alleged moving force behind the violation of the Plaintiff's constitutional right not to be the victim of excessive force.

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation," Mingo v. City of Mobile, 592 Fed. Appx. 793, 799-800 (2014), citing Connick v. Thompson, 563 U.S. 51 (2011). The Plaintiff submits that both ways are applicable under the facts of this case.

Municipal liability under § 1983 attaches under the "deliberate indifference" standard where the municipality has made a "deliberate choice to follow a course of action [] from among various alternatives by city policymakers," City of Canton v. Harris, 489 U.S. 378, 389 (1989). The deliberate indifference standard has alternatively been held to apply "where a failure to train reflects a deliberate or conscious choice by a municipality," Id. "Deliberate indifference in this context requires proof that city policymakers disregarded the 'known or obvious consequence' that a particular omission in their training program would cause city employees to violate citizens' constitutional rights," Connick v. Thompson, 563 U.S. 51 (2011). Despite by that time having been the law of the Eleventh Circuit for more than three decades, not until July 2020 did Defendant COA abandon its prior policy, custom, or practice to not train and/or supervise APD officers on their constitutional duty to intervene despite numerous documented instances of failure to intervene within the APD.

In City of Canton v. Harris, the Supreme Court theorized that instances might exist where a city might be liable under § 1983 for failure to train without proof of a pre-existing pattern of violations. There, the Court offered the possibility that "given the known frequency with which police attempt to capture fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' a city's decision not to train officers about constitutional

limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely violations of the rights of citizens," <u>Board of Commissioners of Bryan County v Brown</u>, 520 U.S. 397, 403 (1997); <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).

By May 30, 2020 the duty to intervene was clearly established law in the Eleventh Circuit. Given the known frequency with which multiple officers are involved in arrest encounters with citizens where some degree of force is used it seems a highly predictable consequence that an officer not trained in the duty to intervene might not intervene for lack of having the specific tools to handle recurring situations, resulting in an inevitable consequence – the violation of a citizen's constitutional rights. While the Plaintiff contends that the cited prior incidents establish deliberate indifference, the Plaintiff alternatively contends that the present facts present an instance in which proof of a pre-existing pattern of violations is not required. Count VI of the Plaintiff's First Amended Complaint thus meets the <u>Iqbal</u> and <u>Twombly</u> pleading requirements.

<u>The Plaintiff's Cited Incidents of Failure to Intervene Are Sufficiently Meritorious to Withstand Dismissal</u>

Including the present case, the Plaintiff relies on nine (9) instances of failure to intervene of which Defendant COA had knowledge. On the other hand, Defendant COA contends that dismissal is warranted because the Plaintiff has failed to establish that the referenced prior failure to intervene incidents cited in the First Amended

Complaint had any merit. In support of this argument Defendant COA cites <u>Gold v. City of Miami</u>, 151 F.3d 1346 (11th Cir. 1998), a case in which Gold failed to cite a single prior incident and <u>Brooks v. Scheib</u>, 813 F.2d 1191 (1987), a case in which the plaintiff relied on the large number of citizens' complaints against the officer, not the substance of those complaints.

Defendant COA, citing <u>O'Kelley v. Craig</u>, 781 Fed. Appx. 888 (2019), argues that the Plaintiff has failed to "provide specific incidences that would give the City of Atlanta knowledge of a need to train and/or supervise" [Doc. 45-1 at page 30]. Unlike in the present case, the plaintiffs in <u>O'Kelley v. Craig</u> failed to cite a single prior incident involving alleged failure to train. There, the plaintiff merely "allege[d] in conclusory fashion that the Sheriff's training policies were inadequate," 781 Fed. Appx. At 899.

In the specific incidents cited by the Plaintiff it is alleged that APD was aware of the failure of certain APD officers to intervene in each cited instance, but took no action to investigate, discipline, or provide additional training. Defendant COA's Motion altogether fails to show, aside from its conclusory assertion, that the cited instances had no merit.

The law does not require, at the pleading stage, a mini-trial on each cited instance of prior failure to intervene. On a motion to dismiss the Court must ask, when liberally construing the complaint in favor of the Plaintiffs, whether it appears

beyond doubt that the plaintiff can prove no set of facts in support of their claim that would entitle then to relief. This burden of proof is on Defendant COA as movant. Defendant COA has failed to carry this burden and its Motion to Dismiss must be denied. The Plaintiffs have plausibly alleged a § 1983 claim predicated on a failure to train and/or supervise relating to APD officers' affirmative duty under the Fourth Amendment to intervene to stop the use of excessive force if in a position to do so. Count VI of the Plaintiffs' Complaint meets the Iqbal and Twombly pleading standards and is not subject to dismissal.

## CONCLUSION

For the within and foregoing reasons Plaintiff prays that Defendant COA's Second Motion to Dismiss is inquired into and denied as to Counts IV, V, and VI of the Plaintiff's First Amended Complaint.

This 30th day of December, 2021.

Respectfully submitted,
/s/ *Harold W. Spence*
HAROLD W. SPENCE
Georgia Bar No. 671150
MAWULI M. DAVIS
Georgia Bar No. 212029
*Attorneys for Ms. Jackson*

**DAVIS BOZEMAN LAW FIRM, P.C.**
4153 - C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
(404) 244-2004 (Telephone)
(404) 244-2020 (Fax)

## <u>CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULE 5.1</u>

I certify that on this date, I electronically filed this **PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system (which document was prepared using Times New Roman, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L. R. 5.1(C)), which will automatically send e-mail notification of such filing to the following attorneys of record:

Joshua S. Foster
**CITY OF ATLANTA**
**DEPARTMENT OF LAW**
55 Trinity Avenue, S.W.; Suite 5000
Atlanta, Georgia 30303
josfoster@atlantaga.gov

Richard A. Carothers
Thomas M. Mitchell
Angela C. Couch
Karen G. Thomas
**CAROTHERS & MITCHELL, LLC**
1809 Buford Highway
Buford, Georgia 30518
richard.carothers@carmitch.com
thomas.mitchell@carmitch.com
angela.couch@carmitch.com
karen.thomas@carmitch.com

Nicholas A. Kinsley
Phillip A. Friduss
R. David Ware
**HALL BOOTH SMITH, P.C.**
191 Peachtree Street; Suite 2900
Atlanta, Georgia 30303
nkinsley@hallboothsmith.com
pfriduss@hallboothsmith.com
dware@hallboothsmith.com

This 30th day of December, 2021.

*/s/ Harold W. Spence*
HAROLD W. SPENCE
Georgia Bar No. 671150
hspence@davisbozemanlaw.com
*Attorney for Ms. Jackson*

**Davis Bozeman Law Firm, P.C.**
4153 - C Flat Shoals Parkway; Suite 332
Decatur, Georgia 30034
(404) 244-2004 (Telephone) / (404) 244-2020 (Fax)